IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WAYNE P. JOHNSON          :    CIVIL ACTION
                          :    NO. 09-1292
                          :
        Plaintiff,        :
                          :
    v.                    :
                          :
                          :
TROY LEVI                 :
et. al,                   :
                          :
        Defendants.       :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    MARCH 11, 2010

## I. INTRODUCTION

Defendants, Federal Bureau of Prisons ("BOP") , the

Federal Detention Center-Philadelphia ("FDC-Philadelphia"), and

FDC-Philadelphia Warden Troy Levi ("Warden Levi")[1] file this

---

[1]     Plaintiff incorrectly named the "Federal Detention
Center Medical Department" in his Complaint. No such entity
exists. The detention facility at which Plaintiff had been
incarcerated is FDC-Philadelphia, which has a Health Services
Department. The federal agency that operates FDC-Philadelphia is
the BOP.  Plaintiff's complaint does not name a specific
Defendant responsible for his lack of proper medical treatment.
Moreover, Plaintiff's complaint does not identify any individual
member of the FDC-Philadelphia Health Services Department.
However, during his deposition, Mr. Johnson identified as
subjects of his allegations the following individuals: (1) Health
Services Administrator Isam Elayan; (2) Odeida Dalmasi, M.D., the
Health Services Department's Clinical Director; (3) Ashok Patel,
M.D.; (4) Mid-Level Practitioner ("MLP") Antonio Fausto; (5)
MLP/Physician Assistant Hussain Bokhari; and (6) Physician
Assistant ("PA") Sandy Carney.  Given that the Plaintiff is pro
se, the Court will construe his Complaint against the "Federal

1

motion to dismiss, or alternatively, for summary judgment under
Fed. R. Civ. P. 56(b). (Doc. no. 24.) For the reasons that
follow, summary judgment will be granted.

## II. BACKGROUND

On March 25, 2009, Plaintiff Wayne Patrick Johnson
("Mr. Johnson") filed a complaint alleging violations of his
civil rights under 42 U.S.C. § 1983 that occurred while he was an
inmate at FDC-Philadelphia. (Doc. no. 1.) Plaintiff's
overarching claim is that the medical staff at FDC-Philadelphia
repeatedly ignored his painful medical condition and complaints.
Plaintiff claims that, beginning in April 2007, he was
experiencing painful rectal bleeding. He claims that the medical
staff (unidentified in his complaint) repeatedly ignored his
requests for appropriate care. Moreover, Plaintiff claims that
Warden Levi failed to fulfill a promise to Johnson that medical
staff would attend to him. Finally, Johnson claims that he was
unable to grieve these issues administratively because his
complaint forms were "accidentally left locked in the [FDC-

---

Detention Center Medical Department" as John and Jane Does. The
Court will also construe the named individual Health Services
Department staff members as substitutes for John and Jane Doe
Defendants. Warden Levi and FDC-Philadelphia, will also be
treated as the named Defendants for this alleged adverse action.

Philadelphia] library[.]"[2] (Complaint.)

On June 19, 2009, Defendants filed a motion to dismiss for lack of jurisdiction and failure to state a claim upon which relief can be granted. (Doc. no. 10.) On October 16, 2009, the Court denied the motion and ordered Defendants to take Plaintiff's deposition and file a motion for summary judgment.[3]

On January 26, 2010, Defendants filed a motion to dismiss or, alternatively, for summary judgment. (Doc. no. 24.) It is this motion that is before the Court. For the reasons that follow, the motion will be granted.

## III. LEGAL STANDARD

### A. Motion for Summary Judgment

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if its existence or non-existence would affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

---

[2]     Plaintiff, at his deposition, testified that after filing his Complaint in this case, he regained access to those grievance complaints/reports, which were all made in 2009. (Johnson Dep. at 26.)

[3]     After Plaintiff's deposition was taken, he was given the opportunity to make discovery requests. It appears that Defendants have reasonably complied with any discovery requests.

(1986). An issue of fact is "genuine" when there is sufficient evidence from which a reasonable jury could find in favor of the non-moving party regarding the existence of that fact. Id. at 248-49. "In considering the evidence, the court should draw all reasonable inferences against the moving party." El v. Se. Pa. Transp. Auth., 479 F.3d 232, 238 (3d Cir. 2007).

"Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by showing-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004) (quoting Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001)). Once the moving party has thus discharged its burden, the nonmoving party "may not rely merely on allegations or denials in its own pleading; rather, its response must-by affidavits or as otherwise provided in [Rule 56]-set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

## B. Section 1983 & Eighth Amendment Medical Treatment for Prisoners

Section 1983 of Title 42 of the United States Code provides a cause of action for an individual whose constitutional or federal rights are violated by those acting under color of

4

state law.[4] See generally Gonzaga University v. Doe, 536 U.S. 273, 284-85 (2002) (recognizing that Section 1983 provides a remedy for violations of individual rights "secured by the Constitution and laws" of the United States).  While plaintiff alleges violations of 42 U.S.C. § 1983, this Court treats the violations as those under Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), as the defendants are federal actors. See Egervary v. Young, 366 F.3d 238, 246 (3d Cir. 2004).

Plaintiff claims a violation of the Eighth Amendment with respect to each of the Defendants.  The Eighth Amendment "requires prison officials to provide basic medical treatment to those [ ] incarcerated." Anderson v. Bureau of Prisons, 176 Fed. App'x 242, 243 (3d Cir. 2006) (quoting Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)). It is well-settled that, "[o]nly 'unnecessary and wanton infliction of pain' or 'deliberate indifference to the serious medical needs' of prisoners are sufficiently egregious to rise to the level of a constitutional

_____

[4]     "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...." 42 U.S.C. § 1983.

violation." <u>Spruill v. Gillis</u>, 372 F.3d 218, 235 (3d Cir. 2004)
(quoting <u>White v. Napoleon</u>, 897 F.2d 103, 108-09 (3d Cir. 1990)
(quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 103 (1976))).  A claim
of medical malpractice is not sufficient for a Constitutional
violation and, thus, negligence on the part of a physician will
not be considered a Constitutional deprivation. <u>Spruill</u>, 372 F.3d
at 235 (citing <u>White</u>, 897 F.2d at 108-09; <u>Estelle</u>, 429 U.S. at
106; <u>Monmouth County Correctional Institutional Inmates v.
Lanzaro</u>, 834 F.2d 326, 346 (3d Cir. 1987)). Finally, "'mere
disagreement as to the proper treatment' is also insufficient."
<u>Spruill</u>, 372 F.3d at 235 (quoting <u>Lanzaro</u>, 834 F.2d at 346
(citations omitted)).  Hence, the standard set out in <u>Estelle</u> to
assess medical treatment claims under the Eighth Amendment
"requires deliberate indifference on the part of the prison
officials and it requires the prisoner's medical needs to be
serious." <u>Spruill</u>, 372 F.3d at 235-236 (quoting <u>White</u>, 897 F.2d
at 109).

**IV. DISCUSSION**

   **A. Sovereign immunity**

        Plaintiff's claims against the BOP, FDC-Philadelphia,
Warden Levi in his official capacity, and any other FDC employees
in their official capcities are barred under the Eleventh
Amendment.  A suit against a government officer in his or her
official capacity is, in essence, a suit against the government.

Kentucky v. Graham, 473 U.S. 159, 166-68 (1985). Bivens claims against the United States are barred by sovereign immunity, absent an explicit waiver. United States v. Mitchell, 463 U.S. 206, 212 (1983). Sovereign immunity deprives federal courts of jurisdiction over suits against the United States. Id.; United States v. Bein, 214 F.3d 408, 412 (3d Cir. 2000). Thus, sovereign immunity bars any constitutional tort claim against the BOP, FDC-Philadelphia, Warden Levi in his official capacity, and any other FDC-employees in their official capacities.

**B. Federal Tort Claims Act**

Any common law tort claim against the BOP, FDC-Philadelphia, and Warden Levi must fail because Plaintiff failed to exhaust administrative remedies.

Section 2675(a) of the FTCA requires as a prerequisite to a civil suit against the United States government that a claim be filed with the relevant federal agency.[5] The FTCA's

---

[5] The FTCA states, in relevant part:

An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury ... unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of the agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section. . . .

28 U.S.C. § 2675(a).

jurisdictional requirements are strictly construed because "[a]s a sovereign, the United States is immune from suit save as it consents to be sued." <u>Bialowas v. United States</u>, 443 F.2d 1047, 1048 (3d Cir. 1971). <u>See also</u> <u>Pascale v. United States</u>, 998 F.2d 186, 193 (3d Cir. 1993); <u>Livera v. First National State Bank of New Jersey</u>, 879 F.2d 1186, 1194 (3d Cir. 1989); <u>Peterson v. United States</u>, 694 F.2d 943, 944-45 (3d Cir. 1982).

Accordingly, presenting a claim to a federal agency before filing suit in federal court is a jurisdictional requirement that cannot be waived. <u>See</u> <u>Livera</u>, 879 F.2d at 1194 ("this is a jurisdictional requirement not subject to waiver by the government."). Indeed, this Court has held that "no exceptions" excuse a plaintiff's failure to comply with the jurisdictional prerequisites of the FTCA. <u>McDevitt v. United States Postal Serv.</u>, 963 F.Supp. 482, 484 (E.D. Pa. 1997) (citing, <u>inter alia</u>, <u>Peterson</u>, 694 F.2d at 944; <u>Bialowas</u>, 443 F.2d at 1049.)

Plaintiff Johnson admits he has not honored the presentment requirement. Thus, the Court lacks subject matter jurisdiction over any common law tort claim by him against the BOP, FDC-Philadelphia, Warden Levi, and/or any other FDC-Philadelphia employee, any and all of which claims are dismissed. <u>See, e.g.,</u> <u>Fullman v. United States</u>, 2007 WL 2262906, at *4 (E.D. Pa. Aug. 7, 2007) (Robreno, J.) (dismissing non-exhausted FTCA

claims for lack of jurisdiction).

**C. Claim Against Warden Levi in his Individual Capacity**

Since a plaintiff may bring a <u>Bivens</u> action against
prison officials in their individual capacity for an alleged
constitutional violation, the Court will address the alleged
facts in support of this claim in the light most favorable to
Plaintiff, as the non-moving party. Plaintiff asserts that
Warden Levi violated the Eighth Amendment by denying him
immediate medical attention for a serious medical need.

**1. Warden Levi's Involvement**

Regarding Warden Levi, the only individual defendant
named in the Complaint, Mr. Johnson does not contend that Warden
Levi was responsible for his medical care in any way. (Johnson
Dep. at 92; 141-142.) Nor does he contend that Warden Levi
hindered his medical care in any way. (<u>Id.</u> at 141-42.) Mr.
Johnson's understanding is that Warden Levi relied on his health
department staff to make decisions about Mr. Johnson's care and
sometimes would report to Mr. Johnson on what he (Levi) was being
told by his staff about Mr. Johnson's condition and the status of
his outside medical appointments. (<u>Id.</u> at 92; 142.)

According to Mr. Johnson, he first spoke with
Warden Levi about his condition in December 2008, at a "unit"
meeting known as a "main line." (<u>Id.</u> at 21-22.) Warden Levi was
orally responding to a December 5, 2008 letter that Mr. Johnson's

criminal law attorney had sent, in which the attorney stated that
the Salem County Correctional Facility physician had recommended
surgery, and that he (the attorney) wished: (a) the warden to
inquire about Mr. Johnson's treatment and need for surgery; and
(b) that any indicated surgery be conducted as soon as possible.
(Id. at 54-55; 85; Defs.' Ex K.)  Warden Levi told Mr. Johnson
that he (Levi) had "taken care of the problem." (Id. at 21-22;
85.)  Dr. Patel then, in mid-January 2009, ordered a surgical
consultation for Mr. Johnson, which Warden Levi referenced in a
February 3, 2009 response to one of Mr. Johnson's grievances.
(Id. at 83-85.)  Mr. Johnson was satisfied by Warden Levi's
written statements that Johnson would soon be evaluated by a
surgeon. (Id. at 92-93; 96-97.)

On January 28, 2009, Mr. Johnson's criminal
attorney wrote to Warden Levi a second time, complaining
that Mr. Johnson still had not seen an outside surgeon. (Id. at
24; 1143-114.)  In approximately late January 2009, Warden Levi
again spoke with Mr. Johnson at main line. (Id. at 87-88.)  Mr.
Johnson explained to the Warden his desire to see an outside
physician and frustration that the process was taking so long.
(Id. at 88.)  Warden Levi summoned the Health Services
Administrator, Mr. Elayan, over to join the conversation and to
provide an update on Mr. Johnson's treatment.  In Mr. Johnson's
presence, Mr. Elayan explained to Warden Levi the treatment plan

for Mr. Johnson, specifically that he was scheduled to see an outside physician, and Warden Levi then explained to Mr. Johnson that Mr. Elayan and his staff were addressing Mr. Johnson's problems. (Id. at 87-89.)  On approximately February 5, 2009, at another main line, Warden Levi told Mr. Johnson that he was partially granting one of his grievances. (Id. at 97-98.)  Mr. Johnson understood the warden to be saying that Mr. Johnson would soon be seeing the outside surgeon (the consult occurred on February 25, 2009) and that the FDC-Philadelphia medical staff would be following the surgeon's recommendations. (Id. at 90-91.)

Thereafter, Mr. Johnson did not have face-to-face interactions with Warden Levi because, beginning in January 2009, Mr. Johnson had begun regularly discussing his concerns with the FDC-Philadelphia Assistant Warden, Mr. Tatum. (Id. at 114-116; 141.)  Assistant Warden Tatum would affirmatively "call to see what was going on with [Mr. Johnson's medical] situation," and would help ensure that outside appointments were made for Mr. Johnson. (Id. at 115-116.)  Assistant Warden Tatum helped ensure that Mr. Johnson: (a) saw a physician for an initial consult in February 2009; (b) was thereafter scheduled and rescheduled for a colonoscopy; (c) on June 26, 2009, was removed from a holding cell sooner than otherwise would have occurred, once it was clear that Johnson's colonoscopy procedure would not occur on that date; and (d) was scheduled for follow-up outside treatment. (Id.

at 116; 124-125; 135-136.)  Mr. Johnson said he is "very
thankful" to Assistant Warden Tatum "for what he did." (<u>Id.</u> at
141.)

Mr. Johnson underwent a colonoscopy on July 17,
2009. (<u>Id.</u> at 138-140.)  The colonoscopy did not reveal cancer or
lesions but diagnosed a hemorrhoid condition. (<u>Id.</u> at 140.)  On
October 22, 2009, he underwent surgery to repair two rectal
fistulae. (<u>Id.</u> at 140-141.)  His post-surgical issues have been
typical for the type of procedure, and the surgery has been
judged a success. (<u>Id.</u> at 27-29; 141.)

### 2. Legal Standard

In order to succeed on a <u>Bivens</u> action alleging an
Eighth Amendment violation, Plaintiff must allege facts that show
Defendant was (1) deliberately indifferent (2) to a serious
medical need. <u>Helling v. McKinney</u>, 509 U.S. 25, 32 (1993).
Plaintiff fails to provide evidence of Warden Levi's deliberate
indifference to his serious medical condition.

Moreover, Mr. Johnson must plausibly allege, beyond
mere legal conclusions, that Warden Levi, through his own actions
and under color of federal law, violated one or more of Johnson's
constitutional rights. <u>Ashcroft v. Iqbal</u>, 556 U.S. ---, 129 S.
Ct. 1937, 1948 (2009) ("[in] Bivens . . . suits, a plaintiff must
plead that each Government-official defendant, through the
official's own individual actions, has violated the

Constitution").

The Iqbal Court clarified that a federal
official sued in his or her individual capacity for alleged
constitutionally tortious behavior cannot be held liable on
a respondeat superior theory or on the basis of some general
link to allegedly responsible individuals or actions. Id. at
1948-49 ("Government officials may not be held liable [under
Bivens] for the unconstitutional conduct of their subordinates
under a theory of respondeat superior . . . [A] plaintiff must
plead that each Government-official defendant, through the
official's own actions, has violated the Constitution. . . .
[P]urpose rather than knowledge is required to impose Bivens
liability on . . . an official charged with violations arising
from his or her superintendent responsibilities"). Accord, e.g.,
Richards v. Pennsylvania, 196 Fed. App'x 82, 85 (3d Cir. 2006)
(in Section 1983/Bivens action alleging excessive force in
arrest, agreeing with Magistrate Judge that plaintiff's "failure
to allege personal involvement on the part of defendant [deputy
warden] proved fatal to [plaintiff's] claims"); Sutton v.
Rasheed, 323 F.3d 236, 249 (3d Cir. 2003) ("[a] defendant in a
civil rights action must have personal involvement in the alleged
wrongs" in order to be liable) (citing Rode v. Dellarciprete, 845
F.2d 1195, 1207 (3d Cir. 1988)); Johnstone v. United States, 980
F. Supp. 148, 151-52 (E.D. Pa. 1997) (court sua sponte dismissed

13

Bivens claim against federal official because "there is no indication" in the amended complaint that the officer "had any personal involvement in the alleged constitutional deprivations," and plaintiff therefore could not "prove any set of facts, consistent with his amended complaint, that would entitle him to relief against [the officer] under Bivens").

### 3. Analysis

Mr. Johnson does not contend that Warden Levi was responsible for, or hindered, his medical care in any way. Mr. Johnson believes that Warden Levi simply: (a) relied on Health Services Department staff to make their own decisions about Mr. Johnson's care; and (b) would occasionally report to Mr. Johnson on what he (Levi) was being told by his staff about Mr. Johnson's condition and the status of his outside medical appointments. During the relevant period, December 2008 to July 2009, Warden Levi merely advised Mr. Johnson that the predicates for his eventual October 2009 surgery (consultation with a doctor, recommended colonoscopy, etc.) were being pursued and scheduled.

Plaintiff's allegations against Warden Levi do not amount to deliberate indifference. Moreover, Plaintiff does not allege or point to any evidence that any of Warden Levi's individual actions violated one or more of his Plaintiff's constitutional rights. Thus, Plaintiff cannot support any individual capacity claim against Warden Levi for violation of

the Eighth Amendment or any other constitutional provision and cannot survive the motion for summary judgment.[6] See Rice v. Reynolds, 2009 WL 839133, at *5-6 (E.D. Pa. Mar. 27, 2009) (dismissing 8th Amendment Bivens claim against Physician Assistant who was not involved in plaintiff prisoner's medical care but merely told prisoner that "he would have someone look into" his injury, which never happened, and further dismissing 8th Amendment Bivens claim against FDC-Philadelphia Warden Troy Levi, who may have been notified of prisoner's medical complaints -- because prisoner "has made no allegations specifically against

_____

[6]    The Court also grants summary judgment against Plaintiff for the additional reason that, as a matter of law, Warden Levi is entitled to qualified immunity.

    Warden Levi asserts he is entitled to qualified immunity in his personal capacity because Plaintiff has failed to demonstrate a violation of a clearly established constitutional right.  The doctrine of qualified immunity protects government officials "from liability for civil suit damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In resolving claims of qualified immunity, a court must decide (1) whether the facts alleged or shown by plaintiff make out a violation of a constitutional right and (2) whether that right was clearly established at the time of the defendant's misconduct. Pearson v. Callahan, 555 U.S. ---, ---, 129 S.Ct. 808, 815 (2009) (altering decision in Saucier v. Katz, 533 U.S. 194 (2001) and holding that it was appropriate for district court to address second prong of two part test first).

    As explained above, assuming that Plaintiff had shown a clearly established Constitutional right, Warden Levi's actions do not rise to the level of deliberate indifference necessary to support Plaintiff's Bivens claim for a violation of his Eighth Amendment rights.

Warden Levi in terms of the medical treatment that he received or did not receive"); Mines v. Levi, 2009 WL 839011, at *6 (E.D. Pa. Mar. 26, 2009) (dismissing pro se prisoner's 8th Amendment Bivens claim against Warden Troy Levi because "Plaintiff only alleges that Defendant Levi knew of his injury through the grievances Plaintiff filed. As such, Defendant Levi . . . cannot be held liable for a Bivens action[] because he was a nonmedical prison official in a supervisory role who did not have personal involvement with the alleged constitutional violation"); Henderson v. Bussanich, 2006 WL 3761998, *6-9 (M.D. Pa. June 20, 2006)(in pro se prisoner 8th Amendment Bivens action, Magistrate Judge screening complaint under former 28 U.S.C. § 1915(e) and recommending dismissal of claims against then-Associate Warden Troy Levi and prison supervisors as non-cognizable where prisoner alleged that these supervisors "were improperly dismissive of his informal complaints" against the medical staff, including that Warden Levi responded to a severe pain complaint by stating "You should try to function at this institution," and then refusing to intervene in treatment); Farley v. Doe, 840 F. Supp. 356 (E.D. Pa. 1993) (Robreno, J.) (dismissing federal prisoner's pro se Bivens 8th Amendment claims against Warden as "legally frivolous pursuant to 28 U.S.C. § 1915(d)").

### D. Claims against FDC Medical Staff

The Court must also grant Defendants' motion for

summary judgment on any _Bivens_ claim that Mr. Johnson is asserting against any FDC-Philadelphia employee other than Warden Levi.

Plaintiff's complaint does not identify any individual member of the FDC-Philadelphia Health Services Department. However, during his deposition, Mr. Johnson identified as subjects of his allegations the following individuals: (1) Health Services Administrator Isam Elayan; (2) Odeida Dalmasi, M.D., the Health Services Department's Clinical Director; (3) Ashok Patel, M.D.; (4) Mid-Level Practitioner ("MLP") Antonio Fausto; (5) MLP/Physician Assistant Hussain Bokhari; and (6) Physician Assistant ("PA") Sandy Carney. Given that the Plaintiff is pro se, the Court will construe his Complaint against the "Federal Detention Center Medical Department" as John and Jane Does. The Court will also construe the named individual Health Services Department staff members as substitutes for John and Jane Does.

Mr. Johnson does not contend that any of these individuals provided him inadequate medical care or failed to treat him properly. He complains that only surgery could have helped (and eventually did help) him and that he did not undergo rectal surgery sooner than he did. He lays blame for the surgery not happening sooner on the nature of FDC-Philadelphia as a "holding facility" and not on these individuals specifically.

17

(Johnson Dep. at 56-58; 143.)

Mr. Johnson fails to point to any evidence that one or more of these individuals: (1) knew that he required, but intentionally refused to provide necessary medical treatment; (2) delayed treatment based on a non-medical reason; (3) erected arbitrary and burdensome procedures that resulted in interminable delays and outright denials of care; (4) prevented him from receiving needed or recommended treatment; (5) denied him access to a physician capable of evaluating the need for treatment; and/or (6) continued a course of treatment known to be painful, ineffective, or entailing a risk of serious harm.

Mr. Johnson cannot predicate his claims upon: (1) assertions that the FDC-Philadelphia employees were negligent or committed medical malpractice; (2) a mere difference of opinion with  FDC-Philadelphia employees over his diagnosis and treatment; or (3) a claim that these individuals declined to provide his preferred method of treatment. See, e.g., Lanzaro, 834 F.2d at 346 ("Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation"); Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (the "deliberate indifference" standard "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients"); Hardy v. Kreider, 1996 WL 583176, at *6 (E.D. Pa.

Oct. 10, 1996) ("the exercise by a doctor of his professional judgment is never deliberate indifference").

Moreover, Mr. Johnson has not pointed to evidence of a non-actionable "difference of opinion" or "medical negligence" on the part of the named individuals, let alone a deliberate indifference deprivation of Eighth Amendment proportions. Indeed, Plaintiff does not argue that any FDC medical staffer (intentionally or otherwise) played a role in delaying his evaluation for surgery and/or his eventual surgery. And Plaintiff acknowledges that treatment was steadily pursued, with unanticipated delays occurring when colonoscopies were cancelled as a result of physician unavailability. As a matter of law, this case, therefore, does not involve the sort of conduct that courts have characterized as "deliberately indifferent." See Coley v. Iwaugwu, 303 Fed. App'x 109 (3d Cir. 2008) (affirming dismissal of prisoner's 8th Amendment Bivens claims alleging delays in removing neck cyst) ("[plaintiff's] allegations reveal that defendants have provided Coley with a regular and recurring course of treatment. He may not always have received treatment as quickly as he would have liked, but he has alleged nothing suggesting that any delays in treatment were the result of deliberate indifference to his medical needs").

Accordingly, Mr. Johnson fails to support a Bivens claim against any FDC-Philadelphia employee. Thus, the Court

must grant Defendants' motion for summary judgment as to all of Mr. Johnson's <u>Bivens</u> allegations against Health Services Administrator Elayan, Drs. Dalmasi and Patel, MLPs Fausto and Bokhari, and PA Carney.

**V. CONCLUSION**

For the reasons set forth above, the motion for summary judgment is granted. An appropriate order follows.